**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1620
_____

MICHAEL MCKENNA; BLUE MARSH LABORATORIES, INC.,
Appellants

v.

STEPHEN KIP PORTMAN; DONALD HENTZ, JR.; PAUL ZIMMERER; AAREN S.
ALGER; RONALD HOUCK; MICHAEL A. STAUB; JANE DOE; JOHN DOE
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 09-cv-05801)
District Judge: Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 26, 2013
_____

Before: CHAGARES, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Opinion Filed: October 8, 2013)
_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

Blue Marsh Laboratories, Inc. ("Blue Marsh") and Michael McKenna, the owner

and President of Blue Marsh, appeal the dismissal of their Fifth and Fourteenth

Amendment claims against Defendants, employees of the Pennsylvania Department of

1

Environmental Protection ("DEP").  Plaintiffs claim that the seizure of their property constituted an unlawful taking and that the seizure was without due process in violation of 42 U.S.C. § 1983.  We will affirm.

I.

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history.[1]  Blue Marsh was a commercial testing laboratory regulated by the DEP.[2]  In January 2008, Defendants executed a search warrant on Blue Marsh's premises and seized Plaintiffs' computers and servers as well as approximately 68 boxes of Plaintiffs' records, including legal files and customer lists.[3]

Within one week of the January 2008 seizure, Plaintiffs filed a motion to quash the search warrant, for the suppression of evidence, and for the return of the property, pursuant to Pennsylvania Rule of Criminal Procedure 588.  A hearing was held on March 19, 2008 before the state court judge who was supervising the then ongoing state grand jury investigation.  The judge ordered Defendants to provide Plaintiffs with copies of all documents that were seized.  The Defendants failed to comply with the order, and Plaintiffs filed a contempt petition.  Before the contempt petition was resolved,

---

[1] For purposes of this appeal, we accept all factual allegations in Plaintiffs' Amended Complaint as true.  Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011).

[2] Blue Marsh engaged in the business of analytical testing of environmental samples, including water and wastewater, to determine the amounts of pollutants and levels of chemicals that were present.  The company provided testing services and reports to numerous customers, including federal agencies, local municipalities, and businesses that were required to comply with regulations of the U.S. Environmental Protection Agency and the DEP.

[3] Defendant Portman had informed McKenna that the time it would take to return Plaintiffs' property would depend on whether McKenna cooperated.

2

Defendants returned Plaintiffs' hard drives and two servers, albeit in damaged condition, requiring Plaintiffs to hire an expert to re-install the hard drives and repair the servers. Blue Marsh alleges that the seizure rendered it unable to continue to operate, and it eventually lost all value. McKenna lost his job as President.

Plaintiffs brought this action in 2009 but it was stayed pending resolution of the underlying federal and state criminal charges against McKenna and Blue Marsh.[4] After the stay was lifted, the District Court granted Defendants' motion to dismiss for failure to state a claim upon which relief could be granted.

## II.

The District Court had jurisdiction in this case pursuant to 28 U.S.C. § 1331. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of the District Court's order granting a motion to dismiss for failure to state a claim is plenary. Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc., 694 F.3d 340, 350 (3d Cir. 2012). In considering whether a complaint should have been dismissed for failure to state a claim, we accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, but we may disregard any legal conclusions. Warren Gen. Hosp., 643 F.3d at 84; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

---

[4] Plaintiffs eventually pleaded guilty to devising a scheme to defraud customers by means of fraudulent representations regarding test results. Blue Marsh was sentenced to five years' probation and McKenna was sentenced to nine months in prison.

3

III.

Plaintiffs claim that Defendants' actions were arbitrary and capricious and that they were determined to drive Plaintiffs out of business and take their property without just compensation, in violation of their Fifth and Fourteenth Amendment rights.[5]  Both of these claims fail as a matter of law.[6]

First, there can be no cognizable Fifth Amendment "takings" claim[7] when property is seized pursuant to a lawful search warrant.  Property seized pursuant to the criminal laws is not a "taking" justifying compensation.  See Lawmaster v. Ward, 125 F.3d 1341, 1351 (10th Cir. 1997) (plaintiff who alleged that officers ransacked his home during a search failed to "allege any facts showing how his property was taken for public use in violation of the Fifth Amendment").  Indeed, outside the context of eminent domain, the government is "not . . . required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority."  Bennis v. Michigan, 516 U.S. 442, 452 (1996); see also Johnson v. Manitowoc Cnty., 635 F.3d 331, 336 (7th Cir. 2011) (Takings Clause does not apply when property is retained or

_____

[5] Although their Amended Complaint seeks relief under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, in their briefs both before this Court and the District Court, Plaintiffs only oppose the dismissal of their Fifth and Fourteenth Amendment claims and essentially concede all remaining claims.

[6] Because we find that these substantive claims are flawed, we do not reach Defendants' arguments that Plaintiffs failed to identify the specific acts in which each defendant engaged that allegedly violated their rights.

[7] The Takings Clause of the Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V. The Takings Clause applies to state action through the Fourteenth Amendment.  Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 370 (3d Cir. 2012).

4

damaged as the result of the government's exercise of police power); AmeriSource Corp.

v. United States, 525 F.3d 1149, 1154 (Fed. Cir. 2008) (citing Bennis, 516 U.S. at 452)

(same); United States v. $7,990.00 in U.S. Currency, 170 F.3d 843, 845-46 (8th Cir.

1999) (same); United States v. Various Gambling Devices, 478 F.2d 1194, 1198 (5th Cir.

1973) (same).  In this case, Defendants were exercising the state's police power when

they seized Plaintiffs' property pursuant to a search warrant, and thus they did not engage

in a "taking" under the Fifth Amendment.

Second, there is no cognizable Fourteenth Amendment procedural due process

claim[8] here as the state provided a reasonable post-deprivation process to challenge the

seizure of property and request its return.[9]  While due process usually requires some type

of pre-deprivation hearing, a post-deprivation hearing may also satisfy the requirement.

Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Here, there was no pre-deprivation

hearing, so we look at the post-deprivation process that the state provides to determine if

it was "constitutionally adequate[,] . . . [and do so by] examin[ing] the procedural

safeguards built into the statutory or administrative procedure of effecting the

deprivation, and any remedies for erroneous deprivations provided by statute or tort law."

Id. at 126.

---

[8] The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

[9] The Due Process Clause also contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them."  Daniels v. Williams, 474 U.S. 327, 331 (1985).  While Plaintiffs' complaint could be read to include a substantive due process claim, that issue was not raised in the brief, and we thus decline to address it here.

Here, Pennsylvania law provides a process to challenge the seizure of property and a protocol to request its return. Pa. R. Crim. P. 588(A) ("A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof."). Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy when police seize property pursuant to an investigation.[10] Potts v. City of Phila., 224 F. Supp. 2d 919, 938 (E.D. Pa. 2002); see also Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals, 766 F. Supp. 2d 555, 571 n.7 (E.D. Pa. 2011). Plaintiffs took advantage of this process when they filed a motion in state court to quash the search warrant, for the suppression of evidence, and for the return of the property. Plaintiffs received a hearing within two months and obtained an order directing the return of copies of their documents. Although Defendants allegedly defied a court order by failing to timely return copies of the documents, Plaintiffs successfully obtained court-ordered relief using the statutory procedures.

---

[10] To determine what procedural protections the Constitution requires, we weigh several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Employing this test, while Plaintiffs had a private interest in recovering their property, as it was essential to their business and livelihood, the state's interest in prosecuting criminal actions that affect the safety of our public water supply was sufficiently important to justify seizing documents believed to be evidence of a crime. Moreover, the Pennsylvania protocol provided Plaintiffs with a prompt means to challenge the deprivation and obtain relief, and Plaintiffs have identified no other procedures that are needed here to avoid wrongful deprivations.

The sole basis for Plaintiffs' procedural due process claim on appeal appears to arise from their purported lack of access to the affidavit that set forth the probable cause for the issuance of the search warrant. While the affidavit would have likely outlined the facts showing that probable cause existed to search the premises and seize the documents, the absence of this information obviously had no impact on Plaintiffs' successful pursuit of their post-deprivation remedies. Plaintiffs had access to and invoked statutorily-prescribed procedures and successfully secured an order compelling the return of their property. The lack of the underlying affidavit had no impact on their ability to successfully invoke those procedures to obtain an order requiring the return of their property and hence cannot be said to have been necessary to prevent an "erroneous deprivation." Mathews, 424 U.S. at 335.

IV.

For the foregoing reasons, we will affirm the District Court's Order granting the motion to dismiss.